

GMM/JAB: USAO 2019R00667

FILED
ENTERED
OCT 22 2019
AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY_____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | **FILED UNDER SEAL** |
| v. | * | |
| | * | |
| HENRY LEE KENNER II, | * | CASE NO. 19-3364-CBD |
| | * | |
| Defendant | * | |
| | * | |

******

## AFFIDAVIT IN SUPPORT OF
## CRIMINAL COMPLAINT AND ARREST WARRANT

I, John P. Fagan, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of a criminal complaint and arrest warrant. Based on the following facts, there is probable cause to believe that, on or about June 8, 2019, in the District of Maryland and elsewhere, **HENRY LEE KENNER II** ("**KENNER**"), committed the offense of kidnapping, in violation of 18 U.S.C. § 1201.

2. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so since April 1995. I have experience and training in investigations of federal crimes, to include violent crimes, corruption of public officials, and white-collar crimes. I have been the primary investigator, or "case agent" on numerous investigations that have led to numerous indictments and convictions.

### PROBABLE CAUSE

3. On September 3, 2019, I was contacted by law enforcement officials in Calvert County, Maryland, regarding a kidnapping that occurred on June 8, 2019.

4. I reviewed the related evidence, reports, and interviews of the victim, witnesses,

1

and law enforcement personnel.

5. On September 17, 2019, I interviewed Victim 1. Victim 1 indicated that she had met **KENNER** on a dating website in approximately March of 2018. **KENNER** and Victim 1 met, in person, for the first time in April 2018. They saw each other several more times in April and by the end of April were in a relationship. **KENNER** was verbally and physically abusive toward Victim 1 during the relationship. **KENNER** and Victim 1 continued to see each other approximately once or twice a week and were in a relationship as of June 8, 2019.

6. On June 8, 2019, Victim 1's cell phone lost power while she was out with friends. She was therefore not in communication with **KENNER**. Victim 1 eventually was able to charge her phone and call **KENNER**. **KENNER** was upset and accused Victim 1 of cheating on her.

7. Victim 1 arrived at her residence, which was located in Calvert County, Maryland, and went upstairs. Her daughter came in and told Victim 1 that **KENNER** was downstairs. Victim 1 had not been expecting him. Victim 1 could not recall if her daughter had let him in or if **KENNER** picked the lock on the door.

8. Victim 1 observed that **KENNER** was wearing a black shirt, black hat, and black shorts. **KENNER** was holding a knife. Victim 1 recalled the knife as being long with a curve to the blade and described it as looking like a machete.

9. **KENNER** approached Victim 1, hit her several times, and pushed her down. He forced her out of the house and into the parking lot. **KENNER** pushed and hit Victim 1 as they walked southwest through the parking lot. **KENNER** knocked the glasses off Victim 1, which made it difficult to see. **KENNER** then pushed Victim 1 into his car and drove away from the residence.

10. Victim 1's son called the Maryland State Police and a trooper responded to the



residence. He and Victim 1's daughter explained to the trooper what happened. The trooper was also able to speak with a witness who was outside during the events. The witness stated that she saw **KENNER** assaulting Victim 1 while forcing Victim 1 into his vehicle. The witness also told the trooper that she had heard **KENNER** threaten to kill Victim 1 if she opened the car door.

11. **KENNER** was screaming at Victim 1 and hitting her while he drove. **KENNER** kept the knife in his hand or lap while he was driving. He accused Victim 1 of ruining his life and of cheating on him.

12. Victim 1 told me that she was extremely scared and feared for her life. She asked **KENNER** if she could call her daughter. He agreed but said that if Victim 1 told her daughter where they were, **KENNER** would kill Victim 1. Victim 1 then called her daughter and told her that everything was okay and that she was at a WAWA in Brandywine, Maryland (per **KENNER**'s instructions).

13. Victim 1 noticed that she had a cut on her thumb and was bleeding. She begged **KENNER** to take her to a hospital. **KENNER** never told her where they were going, but she knows that he took her from Maryland into Virginia.

14. Victim 1 told me that she did not want to be in **KENNER's** car and was forced against her will. She believed that if she were to upset **KENNER** in any way, he would have killed her.

15. **KENNER** eventually began to calm down and was upset and crying. He repeatedly said he was going to jail and that his life was over. Victim 1 told **KENNER** that if he took her to the hospital she would not tell the police. **KENNER** agreed and pulled over to get rid of the knife somewhere along the way.

16. **KENNER** dropped Victim 1 off at Inova Alexandria Hospital in Alexandria,

Virginia and left.

## CONCLUSION

17. Based on your affiant's training, experience and the aforementioned, I submit that there is probable cause to believe **KENNER** committed the offense of kidnapping, in violation of 18 U.S.C. § 1201.

_____
Special Agent John P. Fagan
Federal Bureau of Investigation

Sworn and subscribed before me
this _11_ day of October, 2019

_____
HONORABLE CHARLES B. DAY
UNITED STATES MAGISTRATE JUDGE